Dissenting Opinion.
Bermudez, C. J.
There is no dispute that the general mortgage which encumbers the property of a tutor in favor of his ward, to secure the fidelity of his administration, can be replaced by a special mortgage given after compliance with the requirements of the law, on immovable property belonging to the tutor himself.
The decision just rendered admits that proposition. The question is whether it can be replaced by a mortgage given by a third person, on real estate belonging to him, and not at all to the tutor.
The Code of 1825, which was in force previous to the adoption of the Act of 1830, provides, and the provisions, are still in the Code of 1870, that not only tutors by nature, but all tutors have a right to grant a special mortgage, by restricting the general one to specific qiroperty, which by such restriction would cease to exist. Property other than that to which the mortgage is restricted, is to be disencumbered and remain free from the general mortgage, and inscriptions are to be erased. C. C. 3305, 3306, 3309, 3313; C. N. 2145; 15 An. 417.
Article 325 R. C. C., which is the re-enactment of the Act of 3830, was intended merely to provide the rules of proceeding in such cases, and not, in the least, to exclude tutors, other than the father and mother, from the privilege of giving a special mortgage. Ever watchful over the rights of minors, the law has wisely provided that the general mortgage in favor of minors could be removed only where replaced by a special mortgage, or immovable property accepted by the family meeting, the under tutor and the Judge; but it is perfectly indifferent as to who may own the property encumbered, whether the tutor, or any one else. What difference does it make whether the. rights of the minors are secured on the one or the other, the moment that the title is a good one and the security is sufficient?
The law distinctly says, that the mortgage can be given on immovable property. It, of course, authorizes the giving of it by tutors on their property, but that inclusion is not an exclusion or proscription of property belonging to another, and encumbered in the same manner, and to the same extent as though it belonged to the tutor.
It is true that the law declares that after execution of the mortgage by the tutor, all his remaining property shall be completely discharged from the legal mortgage, but that word does not necessarily imply that *904 the property given in special mortgage, as a condition sine qua non, be part of the tutor’s real estate, and exclude other property not owned by him. If it could be thus interpreted, then, in terms, it would only apply to property in existence at the date of the special mortgage ; and yet.such is not the case, for immediately following the words, “remaining property of the father or mother,” are to be found the words, “ acquired or to be acquired.'1'1 This demonstrates that the word “ remaining ” is not to be interpreted so as to have a fixed, absolute meaning, which can be understood only as excluding a special mortgage on immovable property, other thaii that owned by the tutor.
■ The object of the law, while it afforded a facility to the tutor, was to effectually shield the minor from all danger and loss, as far as human forethought could permit. It was, therefore, indifferent, in the eye of the law, whether the special mortgage was given on this or that immovable property, the moment that the real estate was sufficient to secure the rights of the minors, writh the specified margin of twenty-five per cent, over and above the liquidated rights.
If the law did not say that such mortgage could be given on another person’s property, it is only because it never was imagined that third persons would volunteer to affect their property in such manner; The fact of such willingness in this case proves that the law giver supposed the existence in human nature of less benevolence than is sometimes exhibited. The permission to the tutor to give a special mortgage on Ms property is a superfluity.
It is impossible to conceive why the law should have, a priori, interposed such a limitation.
Suppose the tutor, after giving a special mortgage, was to sell the property, would the rights of the minors against it be impaired ? Suplióse, after the giving of the special mortgage by the tutor, on the property of another person, the property was sold by the latter, would the rights of the minors against it be affected1? Suppose the tutor was to acquire the property of such person after such mortgage had been given on it, would the rights of the minors be lessened ? Would they not, in each and every case, remain identically secured ?
Suppose, at the end of the tutorship, the minors had claims against their tutor, could they not exercise against the property of such third person, and to the same extent the rights which they could have exercised against the property of their tutor, if such had been mortgaged in their favor? Why then deny to the tutor a right, a privilege, which ties up his property, puts it practically out of commerce ? Why give to the law a judicial interpretation which nullifies its spirit and does considerable harm ?
*905 The proposition is unwholesome, that the .property mortgaged in this ease, is encumbered with a vendor’s privilege, and in case of the death of the mortgagor, his widow and minor children might be entitled to a homestead of $1,000, and that the property might further be subjected to funeral charges, expenses of administration, and ultimately, that the mortgage may prove of no benefit to the minors.
The objection can as forcibly be made in the case of a father, tutor by nature, who gives the special mortgage, sells his remaining property, marries again, has children, and dies, leaving them in a state of minority, and their mother in necessitous circumstances.
The argument is clearly one ab ineonvenienti, which cannot deprive the tutor of the benefit of a law which was enacted both for his advantage and that of his minor children.
In such cases the grave responsibility rests upon the members of the family meeting, the under tutor, the appraisers, and the Judge who accepts the tendered special conventional mortgage, and orders the release or discharge of the general legal mortgage from what real estate the tutor may then or thereafter own. Their duty is to see that the title to the property offered is good and valid; that the property is of sufficient and ample value, to secure effectually, with the super-added margin, the liquidated rights of the minor, and that the act be duly recorded. It is further the duty of the tutor and under tutor to see that the buildings are insured. When those duties have been faithfully discharged, the minors are secured and third parties are fully protected.
It is a principle which, to be recognized, did not require to be incorporated in the Code, that the owner óf real estate can mortgage it to secure the obligations of a third person.
Article 3295, R. C. C., provides, indeed, that: “It is not necessary that a mortgage should be given by the person contracting the principal obligation; it may be given for the contract of a third persou.”
To deny the privilege asked in this case is to expunge a valuable right which tutors have, and to write out this Article from the Court. It is destroying legislation and substituting jurisprudence to it.
The mortgage consented and accepted in this case subjects the property in the same manner and to the same extent that it could have been done had it been given by the tutor on an immovable of his own, and it protects as effectually third persons. 14 L. 469; 16 L. 120; 17 L. 194; 2 An. 658; 15 L. 221; also, 2 R. 415; 10 L. 239; 9 L. 192; 15 An. 417; 19 L. 181; 1 An. 62.
Nothing was said or intended to be in 33 An. 52, that militates with the doctrine contended for in the present instance. On the contrary, *906 the ruling in that case harmonizes with the view I take in the actual one. It was then decided, after mature deliberation, that the generaL mortgage in favor of the minor could be replaced only by a special mortgage, given according to law. To rule otherwise would be to do violence to the well settled principle, that the law permits all that which it does not forbid.
Prom the fact that it authorizes a natural tutor to release the general legal mortgage covering all his real estate, by giving a mortgage on immovable property, it justifies the giving of such mortgage, either on immovable property owned by him, or owned by a third person consenting to burden it to secure his obligations.
The adjudicatee of the property in this case is offered such a title as he is bound to accept, and should be held to comply with the terms of sale.